# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| HEIDI EVERSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-80-JAW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a mood disorder and an anxiety disorder, Finding 3, Record at 9; that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id.*; that she retained the residual functional capacity ("RFC") to perform

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes,

a full range of work at all exertional levels but with the following nonexertional limitations: she could perform only unskilled, low-stress tasks, with occasional supervision, occasional interaction with co-workers, and no public interaction, Finding 5, *id*. at 11;[2] that, considering her age (31 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 14; and that she, therefore, was not disabled from January 1, 2005, her alleged disability onset date, through September 8, 2009, the date of the decision, Finding 11, *id*. at 15.[3] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform

---

[2] The administrative law judge's reference to "*loss* stress tasks," Finding 5, Record at 11, clearly is a typographical error.

[3] The plaintiff is insured for purposes of SSD benefits through June 30, 2011. *See* Finding 1, Record at 9.

work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(d), 416.920(d)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(a), 416.926(a)).

## I. Discussion

The plaintiff seeks reversal and remand on two bases: that neither the administrative law judge's Step 3 finding that her impairments did not meet or equal a listing or his determination of her RFC is supported by substantial evidence. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 12) at 3-6. I find no error and, hence, recommend that the decision be affirmed.

### A. Listings Finding

The administrative law judge determined that the plaintiff's mental impairments caused only mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace, with no episodes of decompensation of extended duration. *See* Record at 10. Accordingly, he found that her mental impairments neither met nor equaled Listings 12.04 or 12.06, each of which requires either (i) marked restriction in two of the first three rated areas or (ii) marked restriction in one of the first three rated areas and repeated episodes of decompensation, each of extended duration. *See id*.

The plaintiff challenges these findings on the overarching ground that they contradict the opinion of Margaret Zellinger, Ph.D., ABPP, contained in a neuropsychological evaluation dated July 31, 2006, that the plaintiff likely was disabled by her psychiatric impairments. *See* Statement of Errors at 3; *see also* Record at 259-71. She also takes issue with aspects of the rationale supplied by the administrative law judge for his findings with respect to the three substantive categories, activities of daily living, social functioning, and concentration, persistence, or pace. *See* Statement of Errors at 3-6.

#### 1. Contradiction with Zellinger Disability Opinion

In making her overarching argument, the plaintiff overlooks the existence of other evidence of record supporting the determination that her impairments did not cause sufficiently marked restrictions to meet a listing, most notably the opinions of three Disability Determination Services ("DDS") nonexamining experts, each of whom had the benefit of review of Dr. Zellinger's report. *See* Record at 351, 353 (Psychiatric Review Technique Form ("PRTF") ratings by David R. Houston, Ph.D., dated March 5, 2008), 366 (review dated April 10, 2008, by

James R. Buskirk, M.D., concurring with PRTF ratings of Dr. Houston), 449, 451 (PRTF ratings by Brenda Sawyer, Ph.D., dated July 8, 2008).

When questioned, at oral argument, as to the import of the DDS opinions, the plaintiff's counsel contended that the administrative law judge ran afoul of relevant regulations by according more weight to the opinions of DDS nonexamining experts than that of Dr. Zellinger, who examined the plaintiff. He further argued that the administrative law judge had erred in relying on portions of the Zellinger report that he viewed as undercutting the plaintiff's claim but rejecting portions that supported it, suggesting that, as a matter of fairness and consistency, if the administrative law judge relied on one portion of the report, he should have relied on all of it.

A decision to credit the opinion of a nonexamining expert over that of a consulting expert is not, in itself, error. While it is true, as a general proposition, that opinions of examining sources are entitled to more weight than those of non-examining sources, *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1), this is but one of several factors relevant to evaluation of a medical source's opinion, *see id*. §§ 404.1527(d), 416.927(d), and the First Circuit has made clear that the opinions of nonexamining experts can stand as substantial evidence in support of an administrative law judge's finding, *see, e.g., Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

Nor is it error, in this circuit, to accept in part and reject in part an expert's opinion. *See, e.g.*, *Evangelista v. Secretary of Health & Human Servs.,* 826 F.2d 136, 144 (1st Cir. 1987)

("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians."); *Hicks v. Astrue*, Civil No. 09-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 15, 2010) ("[T]he plaintiff characterizes the administrative law judge's choice of medical evidence on which to rely as 'cherry picking,' but that is precisely the role of the administrative law judge. He need not adopt all of any particular provider's report, if he states his reasons for adopting only a portion of it.") (internal punctuation omitted).

It was the job of the administrative law judge to resolve conflicts in the evidence. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). He was not obliged to adopt the disability opinion of Dr. Zellinger or to adopt all of her conclusions *in toto*. He duly considered the report, accepting portions that he found consistent with the evidence as a whole and rejecting the opinion that the plaintiff likely was disabled, which he deemed inconsistent with other evidence of record. *See* Record at 12.

### 2. Activities of Daily Living

With respect to activities of daily living, the administrative law judge noted that the plaintiff had reported to Dr. Zellinger that she enjoyed watching old television reruns, and brief bicycle rides. *See id*. at 10. The plaintiff argues that an ability to watch movies and take brief

6

bicycle rides is not substantial evidence of a capacity to engage in activities of daily living. *See* Statement of Errors at 5-6. Beyond this, she suggests that the finding is contradicted by the testimony of her stepfather, Larry Sexton, that even after she stopped abusing substances, she continued to have mood swings in a rapid cycling kind of way. *See id.* at 4-5.

Nonetheless, it is apparent that the administrative law judge relied not only on the plaintiff's ability to watch movies and ride a bicycle but also, *sub silentio*, on the findings of Drs. Houston, Buskirk, and Sawyer, each of whom concluded, after reviewing the then-available record, including the Zellinger report, that the plaintiff had only mild restrictions in activities of daily living. *See* Record at 351, 353, 366, 449, 451. The finding that she had only mild restriction in activities of daily living hence is supported by substantial evidence of record.

### 3. Social Functioning

With respect to social functioning, the administrative law judge stated:

> In social functioning, the [plaintiff] has moderate difficulties. Dr. Zellinger noted that the [plaintiff] has historical difficulty getting along with coworkers in her various past jobs. She also noted that the [plaintiff] appeared to have a pattern of self-damaging, recurrent suicidal behavior, and self-mutilating behavior; inappropriate intense anger, and she endorsed chronic feelings of emptiness. She is, however[,] able to tend to her two year old daughter's needs when she sees her on the weekends.

*Id*. at 10 (citations omitted). The plaintiff argues that the record does not substantiate that she can take care of her daughter. *See* Statement of Errors at 5. She notes that she testified that she could not take care of her daughter, that her daughter lived with her mother, and that she had difficulties caring for her daughter even on the weekends. *See id*. The plaintiff did testify that she tried to have her daughter sleep over at her apartment sometimes but it was "very hard" for her. *See* Record at 27. She explained: "I don't have very good patience. I get very agitated very quickly and I just feel awful because I'm supposed to be her mom. I shouldn't be yelling at her

7

all the time." *Id*. Nonetheless, treatment notes for the months just prior to the plaintiff's August 12, 2009, hearing indicate that she was working toward reunification with her daughter and contain no reports of difficulties in her ability to care for her. *See, e.g., id*. at 460-61, 466, 472, 483.

In any event, the record contains substantial evidence in support of the administrative law judge's finding in the form of the opinions of Drs. Houston, Buskirk, and Sawyer, each of whom concluded that the plaintiff had only a moderate impairment in social functioning. *See id*. at 351, 366, 449.

### 4. Concentration, Persistence, or Pace

In finding only moderate restrictions in concentration, persistence, or pace, the administrative law judge observed:

> Consultative examination notes from Dr. Zellinger indicate that the [plaintiff] performed better on more difficult portions of memory tests, with poorer performance on easier tasks. Dr. Zellinger characterized this test result pattern as "implausible." Dr. Zellinger also noted that the [plaintiff] appeared to exaggerate the degree of psychiatric impairment based on her responses to self-report measurements. As a result, Dr. Zellinger documented that she could only identify intact skills, as opposed to supplying a definitive statement regarding any true deficit in her cognitive functioning. Dr. Zellinger did note that problems with attention span appear to be at the root of her cognitive difficulties, but added that it is not[] clear whether the inattention was due to lack of effort, organic impairment, or something else, such as her psychiatric condition. She also noted that the [plaintiff] appeared to rush through tests and made a high degree of errors on relatively simple tasks; Dr. Zellinger opined this would affect her ability to carry out simple tasks without error in a work environment.

*Id*. at 10 (citations omitted).

The plaintiff complains that the finding of only moderate restrictions in concentration, persistence, or pace "seems arbitrary[,]" with the administrative law judge qualifying Dr. Zellinger's report by citing Dr. Zellinger's uncertainty about the source of some of her

symptoms, despite the fact that those symptoms were corroborated by both the plaintiff's hearing testimony and that of her stepfather. *See* Statement of Errors at 5.

I find no error. The administrative law judge's characterization of the Zellinger report is a fair one, *see* Record at 264, 269-70, and his finding of only moderate difficulties in this category of functioning comports with the opinions of Drs. Houston, Buskirk, and Sawyer, *see id.* at 351, 366, 449.

### B. Mental RFC Finding

The plaintiff next and finally complains that the administrative law judge made an RFC finding unsupported by substantial evidence, having misapprehended the import of several record citations on which he relied. *See* Statement of Errors at 6. She specifically argues that:

1. The administrative law judge noted that, in May 2007, the plaintiff reported to Kathy Brooks-Rock, MSN, FNP, that she was "doing very well on the Effexor" and wanted to continue it. *See* Statement of Errors at 6; Record at 12, 329. Yet, "this was an obviously brief interim because in September of that same year in a note from Kennebec Behavioral Health she is given a GAF [Global Assessment of Functioning] [score] of 48" and is described as depressed, with fair judgment, slight awareness, and poor impulsivity. Statement of Errors at 6; *see also* Record at 437.[4]

2. The administrative law judge noted that, in March 2008, the plaintiff reported that her living situation was stable, denied mood lability or side effects from medications and

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34 (boldface omitted).

9

explained that she was going to interview for a coaching job and, if not successful, she would do volunteer work 30 hours per week. *See* Statement of Errors at 6; Record at 12-13, 391-92, 395-96. Yet, she did not get the job, and there is no indication that she ever volunteered. *See* Statement of Errors at 6.

       3.      The administrative law judge noted that, in December 2008, she reported good appetite and energy and noted that she had been going to the gym and using the treadmill. *See* Statement of Errors at 6; Record at 13, 535. Yet, she testified that she went to the gym maybe three times a week for three weeks before she gave it up. *See* Statement of Errors at 6; Record at 42.

       4.      The administrative law judge noted that she also reported, in December 2008, that she had "pretty good self esteem" and was able to socialize every day with her boyfriend, explaining that they listened to music together. *See* Statement of Errors at 6; Record at 13; 535-36. Yet, when the plaintiff was asked during her hearing whether she socialized with her boyfriend and listened to music, she gave no response. *See* Statement of Errors at 6; Record at 42. In addition, the note on which the administrative law judge relied was made when the plaintiff was in the Intensive Outpatient Program ("IOP") for drug and alcohol rehabilitation, was given a GAF score of 40, and was heavily in the midst of an episode of self-medication. *See* Statement of Errors at 6; Record at 539.[5]

---

[5] A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (boldface omitted). While the note to which the plaintiff points does reflect that she was assessed on December 10, 2008, with a GAF score of 40 and was participating in the IOP, it does not reflect that she was then "self-medicating" by abusing drugs or alcohol. *See* Record at 539. She reported maintaining sobriety since June 23, 2008. *See id.* at 531, 539.

5. The administrative law judge noted that Dr. Houston had stated that the plaintiff was able to understand and remember simple instructions and that she shopped, did household chores, prepared meals, and took care of her young child. *See* Statement of Errors at 6; Record at 13, 357. Yet, Dr. Houston, a nonexamining expert who never saw the plaintiff, wrongly concluded that she was able to take care of her young child. *See* Statement of Errors at 6.

For several reasons, the plaintiff's challenge to the administrative law judge's mental RFC finding falls flat:

1. The administrative law judge did not mischaracterize or misapprehend the import of the cited record evidence. While the plaintiff had setbacks after May 2007, *see, e.g.*, Record at 384, 386 (plaintiff complaining on May 5, 2008, of having trouble sleeping, requesting help controlling urge to drink, following release from jail on charge of driving under the influence of a controlled substance), 518, 520 (plaintiff complaining on December 4, 2008, of having nightmares and being unable to sleep or eat), the record reflects overall improvement on prescribed medication and with maintenance of sobriety, particularly in the months just prior to her August 12, 2009, hearing, *see, e.g., id*. at 460-61, 472-73, 478, 480.

There is also record evidence that the plaintiff (i) did volunteer at a homeless shelter, *see id*. at 388 ("She is volunteering at homeless shelter 30hrs/week."), 39 (testimony of plaintiff that she volunteered for about 12 hours a week for about three weeks and then had a panic attack and stopped), (ii) went to the gym on a more regular basis than is reflected in her testimony, *compare id*. at 42 (plaintiff's testimony that she went to gym maybe three weeks, maybe three times a week, and could only stay for about 20 minutes) *with id*. at 424-25 (notation on October 31, 2007, that plaintiff working out five days a week for two hours a day), 501, 503 (notation on February 5, 2009, that plaintiff was either "doing the gym" or trying to take walks outside), 513,

515 (notation on December 17, 2008, that plaintiff had been going to the gym three hours a day), 531, 535 (notation on December 10, 2008, that plaintiff going to the gym, mostly using treadmill), and (iii) was capable of socializing with her boyfriend, including listening to music and watching movies together, *see, e.g., id.* at 501, 503, 507, 509 (notations on February 5, 2009, January 9, 2009, that plaintiff watching a lot of movies, getting along "good" with boyfriend), 513, 515 (notation on December 17, 2008, that plaintiff getting along "great" with boyfriend), 536 (notation on December 10, 2008, that plaintiff had been seeing boyfriend every day, until his car was disabled, and that they listened to music together).

In addition, as discussed above in the context of the plaintiff's challenge to the Listings determination, the record indicates that she was actively working to regain full-time custody of her child and making progress in doing so. *See, e.g., id.* at 460-61, 472-73.

2. The administrative law judge cited other evidence of record, in addition to that with which the plaintiff takes issue, in support of his mental RFC finding, for example, (i) a notation in April 2007 that she had been discharged from a drug and alcohol abuse program with a GAF score of 70 and reporting ongoing sobriety,[6] (ii) a notation in July 2009 that she reported no adverse side effects from her medications and that they seemed to be effective, (iii) contradictions in her hearing testimony that he found eroded her credibility, and (iv) the testimony of her stepfather that treatment had stabilized her mood disorder and anxiety and markedly reduced her depth of depression. *See id.* at 12-13.

---

[6] The administrative law judge mistakenly cited the date of discharge as November 28, 2006, *see* Record at 12; however, that was the date of admission, *see id.* at 275. The date of discharge was April 9, 2007, and the date of the last visit April 2, 2007. *See id.* A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34 (boldface omitted).

3. As suggested by the administrative law judge, *see id.* at 13, his mental RFC determination comported with that set forth in the opinion of DDS nonexamining expert Dr. Houston, *compare* Finding 5, *id.* at 11 *with id.* at 357. Dr. Houston's RFC opinion, in turn, was affirmed by DDS nonexamining expert Dr. Buskirk, *see id.* at 364, and is consistent with the RFC opinion of DDS nonexamining expert Dr. Sawyer, *see id.* at 455.

In short, the administrative law judge's mental RFC determination is supported by substantial evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of March, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge